UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**KEVIN LACKEY,**

    **Plaintiff,**

                                  Case No. 21-11968

v.

                                  Hon. Denise Page Hood

**L.T. HURLEY, et al.,**

    **Defendants.**

_____/

## ORDER DENYING MOTION FOR PARTIAL DISMISSAL

**I.    BACKGROUND**

This matter is before the Court on Defendants Roslyn Beard, Joseph Burton, and L.T. Hurley's Motion for Partial Dismissal of Count III (14th Amendment Due Process "*Brady*" Violations) of the Amended Complaint pursuant to Rule 12(b)(6) of the Rules of Civil Procedure. (ECF No. 28) A response and reply have been filed and a hearing held on the matter.

On August 24, 2021, Plaintiff Kevin Lackey filed a Complaint against Defendants L.T. Hurley, Roslyn Beard, Willie Smith, and Joseph Burton alleging three counts: 4th and 14th Amendment Fabrication of Evidence (Count I); 4th Amendment Malicious Prosecution (Count II); and, 14th Amendment Due Process "Brady" Violations (Count III). (ECF No. 1) A First Amended Complaint was filed

on November 23, 2021, adding Defendant John Hermann, Personal Representative of the Estate of William Penn, deceased, alleging the same counts. (ECF No. 22)

In the early morning hours of July 5, 1992, an 11-year old girl was sexually assaulted by a man who allegedly broke into the girl's house in Detroit. A family dog, a Rottweiler, known to be a vicious dog, was chained in the back yard. The perpetrator took the girl from her bedroom to the back porch where she was assaulted. The girl's mother did not wake up, even though the mother was on the living room asleep on the couch and was a light sleeper. The perpetrator went past the Rottweiler, without alarming it, and left through the back gate and ran down the alley. The perpetrator returned to the home through the back door, passing past the Rottweiler a second time, and told the girl not to tell anyone or he would kill her and her family. The perpetrator again left the back porch, past the Rottweiler a third time, and escaped through the open gate and ran down the alley. (ECF No. 22, PageID.71-.72)

The girl told her mother about the assault, who then called 911. The police responded and more investigators converged on the home around 8:00 a.m. One of the officers, Defendant Penn, with a dog, Midas, began tracking the perpetrator. Penn was told that the perpetrator was wearing yellow pants and black shoes. Instead of beginning the tracking of the perpetrator from the back porch of the house, Penn began the tracking at the open gate at the rear of the back yard. Lackey claims that

2

this path was a well-traveled path used by many people, including himself. Lackey was on his front porch across the alley on Chalmers. Lackey stopped Penn and asked what was going on. Penn told Lackey about the crime. At the time, Lackey was wearing Damage brand jeans, red with yellow leather patches on the thighs, with blue cuffs, a blue-teal t-shirt that matched the cuffs on the pants, and a black Adidas gym shoes with three white stripes. Penn consciously signaled Midas that Lackey was the perpetrator, because they had been conversing for a few minutes. Penn began interrogating Lackey. Although Lackey's clothes did not match the perpetrator's clothes, Lackey was arrested with multiple counts of sexual misconduct involving a child under thirteen. (ECF No. 22, PageID.72-.75)

Lackey claims that the victim did not identify him as the perpetrator. He further claims there was no physical evidence Lackey was near the victim at the time of the assault and that fabricated evidence was used to bolster the case because the victim did not identify Lackey as the perpetrator. Lackey was convicted on January 26, 1992, and was sentenced on March 9, 1993 to 15-25 years in prison. Lackey spent 22 years in prison and two years on probation. (ECF No. 22, PageID.21)

The Innocence Project of New York worked for Lackey's release and exoneration since 2010. In 2018, Innocence Project submitted the case to the Wayne County Prosecutor's Office's Conviction Integrity Unit ("CIU"). The CIU determined

3

that the dog-tracking evidence was flawed. On January 10, 2019, the Wayne County Prosecutor's Office dismissed the charges and the convictions and sentences were ordered vacated and dismissed. (ECF No. 22, PageID.81) Lackey thereafter filed the instant action.

II.     ANALYSIS

   A.     **Motion to Dismiss Standard of Review**

Rule 12(b)(6) of the Rules of Civil Procedure provides for a motion to dismiss based on failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), the Supreme Court explained that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.] Although not outright overruling the "notice pleading" requirement under Rule 8(a)(2) entirely, *Twombly* concluded that the "no set of facts" standard "is best forgotten as an incomplete negative gloss on an accepted pleading standard." *Id.* at 563. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556. Such allegations are not to

be discounted because they are "unrealistic or nonsensical," but rather because they do nothing more than state a legal conclusion–even if that conclusion is cast in the form of a factual allegation. *Ashcroft v. Iqbal,* 556 U.S. 662, 681 (2009). To survive a motion to dismiss, the non-conclusory "factual content" and the reasonable inferences from that content, must be "plausibly suggestive" of a claim entitling a plaintiff to relief. *Id.* Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not shown, that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). The court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account. *Amini v. Oberlin College,* 259 F.3d 493, 502 (6th Cir. 2001).

    **B.** **Count III, 14th Amendment Due Process "Brady" Violations**

Defendants Beard, Burton and Hurley move to dismiss Count III, the 14th Amendment Due Process "Brady" Violations claim, asserting that this claim is wholly conclusory because it fails to identify evidence that was allegedly withheld. To the extent Lackey asserts that the evidence withheld pertains to the purported fabrication of evidence, Defendants argue that Count III is redundant of Count I, the Fourth and Fourteenth Amendments' Fabrication of Evidence claim, and should be dismissed.

Defendants claim that the alleged fabricated evidence was disclosed and used at trial.

In response, Lackey argues that because Defendants did not dispute the adequacy of the Fabrication of Evidence claim in Count I, such facts may also apply to the Brady claim in Count III. The claims have different elements, but may be based on the same facts.

A constitutional tort claim on the basis of *Brady v. Maryland*, 373 U.S. 83 is properly construed as a 42 U.S.C. § 1983 claim. *Brady* holds that prosecutors must turn over favorable evidence to the accused when the evidence is material either to guilt or punishment; wrongful withholding is a violation of the right to due process. 373 U.S. at 89. Evidence is material when "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles v. Whitley*, 514 U.S. 419, 433–34 (1995) (internal quotation marks omitted). This obligation extends to evidence that is favorable to the accused "either because it is exculpatory, or because it is impeaching." *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999). "[B]ecause the police are just as much an arm of the state as the prosecutor, the police inflict the same constitutional injury when they hide, conceal, destroy, withhold, or even fail to disclose material exculpatory information." *Moldowan v. City of Warren*, 578 F.3d 351, 379 (6th Cir.2009); *Robertson v. Lucas*, 753 F.3d 606, 619–20 (6th Cir. 2014). The Supreme Court in *United States v. Ruiz,*

536 U.S. 622 (2002) established that impeachment material need only be disclosed for trial. *See United States v. Wells*, 260 F. App'x. 902, 903–04 (6th Cir.2008); *Robertson*, 753 F.3d at 621. "In general, the principles announced in *Brady* do not apply to a tardy disclosure of exculpatory information, but to a complete failure to disclose. If previously undisclosed evidence is disclosed ... during trial, no *Brady* violation occurs unless the defendant has been prejudiced by the delay in disclosure." *United States v. Word*, 806 F.2d 658, 665 (6th Cir.1986) (internal citation omitted); *Robertson*, 753 F.3d at 621.

The requirements to establish a *Brady* violation are: (1) evidence favorable to a defendant; (2) that was suppressed; (3) and would have had a reasonable probability of changing the result of the proceeding. *Mills v. Barnard*, 869 F.3d 473, 486 (6th Cir. 2017).

The Court finds that the allegations in the First Amended Complaint meet the *Brady* violation requirements in that: (1) the evidence favorable (that such evidence was fabricated or that the evidence at the scene did not fit the fabricated story) to Lackey; (2) that was suppressed (Defendant officers did not disclose to the prosecutors or Lackey that the evidence was fabricated or that the evidence at the scene did not fit the fabricated story); (3) and would have had a reasonable probability of changing the result of the proceeding because the jury would not have relied on the

fabricated evidence if they knew the evidence was fabricated or the prosecutor would not have used the evidence if the prosecutor knew the evidence was fabricated.

The First Amended Complaint states that the individual defendants "deliberately and knowingly chose not to disclose material exculpatory and impeachment evidence (the fabricated evidence set forth above) to the prosecutor in violation of their constitutional obligation under *Brady v. Maryland*..." (First Amended Complaint, ¶ 84, ECF No. 22, PageID.90) The "fabricated evidence set forth above" was contained in Count I. Paragraph 85 of Count III alleges that "HURLEY further deliberately and knowingly chose not to disclose to the prosecutor or defense before trial that the evidence demonstrated Plaintiff could not have entered the home and committed the crime because there was no evidence that he entered the house and the prosecutor's theory of the crime did not match the evidence at the scene." *Id*. at PageID.90.

The Court finds that Count III sufficiently alleges, along with the factual allegations in the Amended Complaint, that the officers fabricated a scenario to manufacture probable cause for the charge of Breaking and Entering and Criminal Sexual Conduct, despite the physical evidence completely contradicting the Defendants' made-up story, and that Defendants did not disclose that the story was fabricated or that the physical evidence did not match the fabricated story.

> The Amended Complaint further alleges:
>
> 38. At no time in the entire criminal case did the minor victim identify Plaintiff as the perpetrator.
> 39. There was no physical evidence placing Plaintiff near the victim at the time of the assault, including fingerprints or footprints.
> 40. At trial, the individual Defendants testified consistent with their fabricated reports as to the minor victim's alleged description of the perpetrator matching the physical characteristics of Plaintiff.
> 41. The prosecution used the fabricated evidence to counter the minor victim's testimony set forth in paragraphs 16-18. The fabricated evidence was used to overcome the fact that there was no physical evidence linking Plaintiff to the crime and the minor victim had not identified Plaintiff as the perpetrator in a corporeal lineup.

(ECF No. 22, PageID.80)

The case cited by the defense, *Rics v. Pauch,* 2021 WL 4775145 (6th Cir. Oct. 13, 2021), was in the summary judgment stage on qualified immunity. In *Rics*, the fabrication claim is based on allegations that the officers falsely matched the evidence bullets and the handgun and switched the bullets given to the expert. The *Brady* claim, on the other hand, is based on allegations that the officers knew (but failed to disclose) that the bullets in evidence did not match with the handgun. This is essentially the same claim as here in that Lackey alleges the Defendants fabricated the evidence and that Defendants failed to disclose that the fabricated evidence did not match the evidence at the scene of the crime.

The *Siggers v. Alex*, 2021 WL 4391170 (E.D. Mich. Sept. 24, 2021) case was also at the summary judgment phase. In *Siggers*, plaintiff alleged that the officer did

9

not give certain information to the prosecutor which were different from his field notes. Similar to this case, Lackey alleges that the information used by Defendants at trial that Lackey was the perpetrator did not comport with the evidence that there was no physical evidence of him at the crime scene.

In *Mills v. Barnard*, 869 F.3d 473 (6th Cir. 2017), the Sixth Circuit directed the district court to only review the complaint. The *Mills* court indicated that the Brady claim was distinct from the fabrication claim. The fabrication of evidence claims was that DNA results were provided that exonerated the plaintiff in that case but the defendant chose to report that the evidence were consistent in order to support the prosecution's case. The *Brady* claim was that because there was DNA evidence that was inconclusive, but the report was made to comport with the prosecution's theory. Like this case, the evidence presented was made to comport with the theory that Lackey was the perpetrator, but that this evidence did not jive with the evidence at the scene and that Defendants may not have produced such evidence to the prosecutor or defense.

Discovery may reveal if Defendants suppressed evidence that will show there was no physical evidence linking Lackey to the crime scene and that such was not disclosed to the prosecutor or defense and also was not shown at trial. There is no evidence yet to show what evidence was presented at trial–whether the fabricated

evidence presented at trial was the only evidence linking Lackey to the crime and that no other exculpatory evidence was presented at trial to challenge the fabricated evidence. The testimony at trial is not before the Court. The Court is unable to determine, at the Rule 12(b)(6) motion stage, whether the prosecution/officers suppressed the evidence that the fabricated evidence did not link Lackey to the crime scene at all and whether the defense at trial was able to challenge the fabricated evidence at all. At this pleading stage, Lackey has sufficiently pled that Defendants failed to disclose the alleged fabricated evidence and that such did not match the evidence at the crime scene. Count III will not be dismissed for failure to state a claim upon which relief may be granted at this pleading stage.

### III. CONCLUSION/ORDER

For the reasons set forth above,

IT IS ORDERED that Defendants' Motion to Dismiss Count III, the *Brady* violation claim (ECF No. 28), is **DENIED**.

s/Denise Page Hood<br>
DENISE PAGE HOOD<br>
UNITED STATES DISTRICT JUDGE

Dated: September 27, 2022