**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**KEVIN LACKEY,**

    **Plaintiff,**

                                              Case No. 21-11968

v.

                                              Hon. Denise Page Hood

**L.T. HURLEY, et al.,**

    **Defendants.**

_____/

**ORDER DENYING MOTION FOR DISMISSAL OF
CO-DEFENDANT ESTATE OF WILLIAM PENN (ECF NO. 54)**

**I.    BACKGROUND**

This matter is before the Court on Defendants L.T. Hurley, Roslyn Beard, Joseph Burton, and Willie Smith's Motion to Dismiss Co-Defendant John Herman, the Personal Representative of the Estate of William Penn (Estate of Penn). Plaintiff and Co-Defendant Estate of Penn filed a response. Defendants thereafter filed a reply.

On August 24, 2021, Plaintiff Kevin Lackey filed a Complaint against Defendants L.T. Hurley, Roslyn Beard, Willie Smith, and Joseph Burton, which was amended on November 23, 2021 adding Co-Defendant Estate of Penn. The Amended Complaint alleges the following counts: 4th and 14th Amendment Fabrication of Evidence (Count I); 4th Amendment Malicious Prosecution (Count II); and, 14th Amendment Due Process "Brady" Violations (Count III). (ECF No. 22) On September 27, 2022, the Court entered an Order denying Defendants' Motion to Dismiss Count III, the *Brady*

violation claim.   (ECF No. 49)

In the early morning hours of July 5, 1992, an 11-year old girl was sexually assaulted by a man who allegedly broke into the girl's house in Detroit.   A family dog, a Rottweiler, known to be a vicious dog, was chained in the back yard.   The perpetrator took the girl from her bedroom to the back porch where she was assaulted.   The girl's mother did not wake up, even though the mother was on the living room asleep on the couch and was a light sleeper.   The perpetrator went past the Rottweiler, without alarming it, and left through the back gate and ran down the alley.   The perpetrator returned to the home through the back door, passing past the Rottweiler a second time, and told the girl not to tell anyone or he would kill her and her family.   The perpetrator again left the back porch, past the Rottweiler a third time, and escaped through the open gate and ran down the alley.   (ECF No. 22, PageID.71-.72)

The girl told her mother about the assault, who then called 911.   The police responded and more investigators converged on the home around 8:00 a.m.   One of the officers, Defendant Penn, with a dog, Midas, began tracking for the perpetrator. Penn was told that the perpetrator was wearing yellow pants and black shoes.   Instead of beginning the tracking of the perpetrator from the back porch of the house, Penn began the tracking at the open gate at the rear of the back yard.   Lackey claims that this path was a well-traveled path used by many people, including himself.   Lackey was on his front porch across the alley on Chalmers.   Lackey stopped Penn and asked what was going on.   Penn told Lackey about the crime.   At the time, Lackey was wearing Damage brand jeans, red with yellow leather patches on the thighs, with blue cuffs, a blue-teal t-shirt that matched the cuffs on the pants, and a black Adidas gym

2

shoes with three white stripes.   Penn consciously signaled Midas that Lackey was the perpetrator, because they had been conversing for a few minutes.   Penn began interrogating Lackey.   Although Lackey's clothes did not match the perpetrator's clothes, Lackey was arrested with multiple counts of sexual misconduct involving a child under thirteen.   (ECF No. 22, PageID.72-.75)

Lackey claims that the victim did not identify him as the perpetrator, there was no physical evidence Lackey was near the victim at the time of the assault, that fabricated evidence was used, to bolster the case because the victim did not identify Plaintiff as the perpetrator, nor any physical evidence linking Lackey to the victim.   Lackey was convicted on January 26, 1992, and was sentence on March 9, 1993 to   15-25 years in prison.   Lackey spent 22 years in prison and another two year on probation.   (ECF No. 22, PageID.21)

The Innocence Project of New York worked for Lackey's release and exoneration since 2010.   In 2018, Innocence Project submitted the case to the Wayne County Prosecutor's Office's Conviction Integrity Unit ("CIU").   The CIU determined that the dog-tracking evidence was flawed.   On January 10, 2019, the Wayne County Prosecutor's Office dismissed the charges and the convictions and sentences were ordered vacated and dismissed.   (ECF No. 22, PageID.81) Lackey thereafter filed the instant action.

The Amended Complaint added the Estate of Penn on November 23, 2021. Officer Penn died on December 19, 2005, and an Assignment of Property probate matter was closed on January 4, 2006, disposing of Penn's asset.   (ECF No. 54, PageID.332-.333)   On the same day as the Amended Complaint was filed, Lackey, the

3

Plaintiff in this case, petitioned the Wayne County Probate Court to open an estate for decedent Penn, naming attorney Hermann as the Personal Representative of Penn's estate. (ECF No. 54, PageID.340-.341) Hermann, the Personal Representative of the Penn Estate, has an attorney-client relationship with Lackey. The Notice of the Estate was not published.

## II. ANALYSIS

### A. Motion to Dismiss under Fed. R. Civ. P. 12(c)

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The same review standard applies as for review of a Rule 12(b)(6) motion to dismiss. *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008). "[A]ll well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment" as a matter of law. *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581–82 (6th Cir. 2007) (quoting *S. Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478 (6th Cir. 1973)). To survive a Rule 12(c) motion, "a complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory." *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." (citations omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007))). The court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account. *Amini v. Oberlin College,* 259 F.3d 493, 502 (6th Cir. 2001).

### B. Time-Barred under Michigan's Probate Law

The Moving Defendants assert that the Estate of Penn must be dismissed based on Michigan's probate law, Estates and Protected Individuals Code, M.C.L. § 700.1101, et seq. (EPIC), which contains a nonclaim statute, mandating certain prohibitions against filing claims against a decedent years after death. Nonclaim statutes are separate and distinct from statutes of limitations and are broader in their operation. In Michigan, EPIC contains a broad nonclaim statute, which includes all claims, including torts like those alleged in this case by Lackey. Defendants assert that under M.C.L. § 700.3803(b), Lackey's claim against the Estate of Penn is barred because the claim was not brought against the Estate within four months after the claims arose. Defendants allege that the claims against the Estate of Penn arose in January 2019, when the criminal case was dismissed, but the claims against the Estate of Penn were not brought until November 2021, well-beyond the four month requirement under Michigan law.  In addition, Defendants assert that the Notice was never published as required by Michigan law, and so no creditors have notice of the opening of the Estate of Penn.  Defendants further assert that this late claim against the Estate of Penn is barred by M.C.L. § 700.3803(3)(b) does not apply because Penn was not protected by any liability insurance and the City of Detroit does not defend or indemnify deceased former officers.

The Estate of Penn responds that a Notice of Publication with the Detroit Legal News was provided to the creditors, including Lackey.   (ECF No. 59, PageID.378-.380)  Lackey filed his State and Proof of Claim to the Probate Court on January 26, 2023.  (ECF No. 59, PageID.381-.382)  The Estate of Penn therefore claims that Lackey

timely filed its claim against the Estate within the four months after the publication.

Lackey also responded that because Defendants supported their Motion to Dismiss with exhibits, the motion should be treated as one for summary judgment under Rule 56(c) and that the parties should be given reasonable opportunity to present all the material pertinent to the motion. Lackey asserts that the Estate of Penn complied with Michigan's probate law in that Lackey submitted his claim before the Probate Court within 21 days of the date of publication, as noted by the Estate of Penn exhibits. Lackey claims that the City of Detroit provides a defense and indemnity to its current and retired police officers, but questions the City's reason that it does not defend or indemnify an officer serving the City as a police officer because he is dead. Lack also questions whether Defendants have the standing to bring this motion on behalf of Penn, because the City of Detroit is not helping him, but is trying to save itself. Lackey did consent to the dismissal of the Estate, but now withdraws his consent.

In reply, Defendants note that neither Lackey nor Herman, the Personal Representative of the Estate of Penn, have a consolidated goal of acquiring money damages for Lackey. Herman has appeared as counsel and representative for the Estate of Penn, to assist his other client, Lackey, Plaintiff in this case, to establish liability against deceased Officer Penn. Both Hermann and Lackey, knew that the Estate of Penn had not assets, but both hope that the City of Detroit would indemnify the claim against the Estate of Penn. Defendants claim that Lackey and Hermann are manipulating in the litigation process because Hermann refuses to defend the Estate of Penn, by contesting the instant motion, which would benefit the Estate of Penn. Lackey, Plaintiff in this case, stipulated to dismiss the Estate of Penn, but now seeks to

7

oppose the motion to dismiss. Defendants assert that Lackey and Hermann are coordinating efforts to manipulate the litigation process.

Defendants assert that the Estate of Penn's Personal Representative, cannot reject the valid defense that Defendants raised in the motion of failure to publish. It was not until after Defendants filed the Motion to Dismiss that the Estate of Penn's Personal Representative published the Notice. Hermann, the Personal Representative, is in a conflicted position.

Defendants also assert that Lackey's stipulation to dismiss the Estate of Penn cannot be withdrawn because it is binding under Sixth Circuit law. As to documents submitted with the Motion to Dismiss, Defendants assert that public records are proper as exhibits in a Rule 12(c) motion.

M.C.L. § 700.3803 provides,

(1) A claim against a decedent's estate that arose *before* the decedent's death, including a claim of this state or a subdivision of this state, whether due or to become due, absolute or contingent, liquidated or unliquidated, or based on contract, tort, or another legal basis, if not barred earlier by another statute of limitations or nonclaim statute, is barred against the estate, the personal representative, the decedent's heirs and devisees, and nonprobate transferees of the decedent unless presented within 1 of the following time limits:

(a) If notice is given in compliance with section 3801 or 7608, within 4 months after the date of the publication of notice to creditors, except that a claim barred by a statute at the decedent's domicile before the publication for claims in this state is also barred in this state.

\* \* \*

(2) A claim against a decedent's estate that arises at or *after* the decedent's death, including a claim of this state or a subdivision of this state, whether due or to become due, absolute or contingent, liquidated or unliquidated, or based on contract, tort, or another legal basis, is barred against the estate, the personal representative, and the decedent's heirs and devisees, unless presented within 1 of the following time limits:

8

> *(a) For a claim based on a contract with the personal representative, within 4 months after performance by the personal representative is due.*
> *(b) For a claim to which subdivision (a) does not apply, within 4 months after the claim arises or the time specified in subsection (1)(a), whichever is later.*
>
> (3) This section does not affect or prevent any of the following:
>
> (a) A proceeding to enforce a mortgage, pledge, or other lien on estate property.
>
> (b) A proceeding to establish the decedent's or the personal representative's liability for which the decedent or the personal representative is protected by liability insurance to the insurance protection limits only.
>
> (c) Collection of compensation for services rendered and reimbursement of expenses advanced by the personal representative or by an attorney, auditor, investment adviser, or other specialized agent or assistant for the personal representative of the estate.

M.C.L. § 700.3803 (West).

Addressing Lackey and the Estate of Penn's argument that this motion should be considered as a summary judgment motion under Rule 56(b), the Court notes that the exhibits attached to Defendants' motion involve publicly-filed exhibits in a state court probate matter, which are allowed under a Rule12(b)(6) motion.

As set forth in the statute, M.C.L. § 700.3803(1)(b), a creditor has four months from the date of publication to file its claim against the Estate. In this case, Lackey did file its notice of claim against the Estate before the Probate Court within four months. The issue is whether the Estate of Penn is an appropriate Estate to be opened, many years after the death of Penn and given that there are no assets in the Estate based on the previous distribution of the assets shortly after Penn's date. In addition, the issue also is how long does the Estate should publish the Notice after the Estate is opened?

9

As to whether the Estate of Penn was appropriately opened at this time, years after Penn's death, it appears based on the submissions of the parties that the current Estate is proper because there has yet to be a ruling by the Probate Court that the Estate of Penn is an improperly opened Estate.   It is not proper for this Court to rule on whether the Estate of Penn is a properly opened Estate.

As to the time in which the Estate must publish a Notice to creditors, the moving Defendants have not submitted any statute or rule which gives the Estate a time-line to publish such a Notice.   In any event, this Court has no authority to determine whether the Estate timely published a Notice to the creditors.   However, there is no dispute that once the Estate published the Notice, Lackey filed its Notice of Claim before the Probate Court within the four months required by the statute.

Defendants cite *Gavitt v. Ionia County*, Case No. 14-12164, 2014 WL 5666943 (E.D. Mich. Nov. 3, 2014).   In *Gavitt*, the claims against the decedent's estate arose after the decedent's death and the district court determined that M.C.L. § 700.3803(2)(b) applied.   The District Court initially found that the plaintiff's claims were barred under this statute.   However, upon reconsideration of this issue, which the moving Defendants did not so cite, the District Court held,

> Considering that Special Personal Representative Lauka did publish a notice to creditors on August 13, 2014, and reading subsections 3803(2)(b), 3803(1)(a), and 3803(1)(c) of Michigan's Probate Court, Plaintiff Gavitt's § 1983 claims against Mr. DeVries's Estate *would not be time-barred under subsection under Mich. Comp. Laws § 3803(1)(c)*, *contrary to what this Court previously held*. Thus, an amendment substituting DeVries's Estate for decedent would survive a Rule 12(b)(6) motion raising a statute-of-limitations defense and would not be futile.

*Gavitt  v. Devries*, 2014 WL 7157193, at *3 (E.D. Mich. Dec. 15, 2015)(italics added).

10

In light of the District Court's ruling on reconsideration that the claim was not time-barred because a notice to creditors was published and the plaintiff timely filed a notice of claim against the estate, this Court will not dismiss the Estate of Penn from this action based on this argument. The Estate of Penn published a Notice, and, Lackey filed a Notice of Claim within the four months required by the statute.

As to the stipulation to dismiss, Lackey did so stipulate, but Defendant Estate of Penn did not. There is nothing to show that the Stipulation was filed with the Court. In any event, the Court has not entered an order dismissing the Estate of Penn based on any stipulations by any party. Even if Lackey and these Defendants agreed to the dismissal of the Estate of Penn, the Estate of Penn did not stipulate to such. The Estate of Penn remains at this time as a Defendant. The Court will not determine whether Lackey is bound by the Stipulation since it is not dispositive of the issue before the Court.

### III.  CONCLUSION/ORDER

For the reasons set forth above,

IT IS ORDERED that Motion to Dismiss Co-Defendant John Herman, the Personal Representative of the Estate of William Penn filed by Defendants Roslyn Beard, Joseph Burton, and L.T. Hurley **(ECF No. 54)** is **DENIED**.

s/Denise Page Hood
Denise Page Hood
United States District Judge

Dated:   October 6, 2023

11