UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN LACKEY,

    Plaintiff,

v.

L.T. HURLEY, et al.,

    Defendants.

_____/

Case No. 21-11968

HON. DENISE PAGE HOOD

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT FILED BY DEFENDANTS HURLEY, BEARD, SMITH, AND BURTON (#81)

**I.    BACKGROUND**

This matter is before the Court on Defendants L.T. Hurley, Roslyn Beard, Willie Smith, and Joseph Burton's Motion for Summary Judgment. A response and reply have been filed and a hearing held on the matter.

On August 24, 2021, Plaintiff Kevin Lackey filed a Complaint against Defendants L.T. Hurley, Roslyn Beard, Willie Smith, and Joseph Burton alleging three counts: 4th and 14th Amendment Fabrication of Evidence (Count I); 4th Amendment Malicious Prosecution (Count II); and 14th Amendment Due Process "Brady" Violations (Count III). (ECF No. 1) A First Amended Complaint was filed on November 23, 2021, adding Defendant John Hermann, Personal Representative of the Estate of William Penn, deceased, alleging the same counts.

(ECF No. 22) On September 27, 2022, an Order Denying Motion for Partial Dismissal as to Count III was entered by the Court. (ECF No. 49)

Lackey's statement of facts is taken from the First Amended Complaint which he claims are borne out by the documents and deposition testimony produced in this case. (ECF No. 84, PageID.1100) In the pre-dawn morning hours of July 5, 1992, an 11-year-old girl was sexually assaulted by a man who allegedly broke into the girl's house at Marlborough Street in Detroit, Michigan. Now at 44 years old, the victim, SS, testified at her deposition that she does not have a good memory of the details of the crime and what she told the police at that time. (SS Dep., ECF No. 84, PageID.1160) She testified at her deposition that she told the truth at trial, which was the same thing she told the officers at the scene. (*Id*. at PageID.1159) The perpetrator entered the house through the window of SS's first-floor bedroom. He then took her to the back porch where she was assaulted. The perpetrator allegedly broke into the house by climbing a four-foot-high fence, which was three feet from the house, then prying through a chicken wire screen over the first-floor bedroom window that was 6.5 feet high. The bedroom window was closed, but the perpetrator managed to open the window without leaving any physical evidence. He then fell onto a bed occupied by three sleeping girls without waking anyone. SS testified that the perpetrator picked her

2

up from the bed where her two other sisters were sleeping. She testified that when she woke up, she was in the dining room, facing away from the man carrying her. The perpetrator carried SS from the bedroom, through the dining room and kitchen, past her mother who was asleep on the living room couch. He took her to the back porch to assault her. SS stated that all she saw was the bottom of the perpetrator's pants, which were yellow, and his shoes, which were black. (SS Tr. Trans., ECF No. 84, PageID.1320-1322) SS testified that she never told anyone, including the officers at the scene, that she saw her assailant's face or knew the color of his skin or that he was Black, because the house and back porch were dark, and the porch light was not on. (*Id*. at PageID.1329-.1332, .1342)

After taking SS from the bedroom to the back porch and assaulting her, the perpetrator told her to count to 100. He then left the house through the back door, opening the gate to the back alley, returning to the back porch to warn the girl not to tell anyone, and leaving through the back yard. The perpetrator did all this without disturbing the family dog.

The girl's mother, Cynthia Stafford, did not wake up, even though the mother was in the living room asleep on the couch and was a light sleeper. Cynthia testified at the criminal trial that the bedroom window was closed when she checked on her daughters at 11 p.m. (C. Stafford Tr. Trans., ECF No. 84,

PageID.1178)

The family dog, a 110-pound Rottweiler, known to be a vicious dog, was chained in the back yard. The perpetrator went past the Rottweiler on the way into the house, without alarming it. He then left through the back gate and ran down the alley. The perpetrator returned to the home through the back door, passing the Rottweiler again, and told SS not to tell anyone or he would kill her and her family. The perpetrator again left the back porch, past the Rottweiler, and escaped through the open gate and ran down the alley. (ECF No. 22, PageID.71-.72) SS testified that the dog was friendly to family members. (SS Dep., ECF No. 84, PageID.1158)

Cynthia heard her daughter crying in the kitchen. She had to turn on the kitchen light because she could not see her daughter in the dark. (C. Stafford Tr. Trans., ECF No. 84, PageID.1180-.1181) Cynthia went to the backyard and noticed the back gate was open, which was always kept closed. *(Id*. at PageID.1182) The dog was chained in the backyard between two cars. *(Id*.) Cynthia called her husband, Walter Stafford, when she returned to the house at approximately 7:30 a.m. He was at a job site earlier that morning. Walter returned home before the police arrived. Walter testified at the criminal trial that when he arrived home in the morning, he noticed the wire mesh was torn away

4

from two sides of the windows, that there was mud on the fence and a footprint in the mud under the bedroom windows.  (W. Stafford Tr. Trans., ECF No. 84, PageID.1241-1241)   SS told the police that she was the one to wake up her mother after the assault and that her mother then woke up her father.  (R. Beard Report, ECF NO. 84, PageID.1362) Lackey testified at his deposition that he noticed the girl's father, Walter, wore yellow pants, and old black gym shoes, and a dirty red jacket with white stripes on the sleeve.  He noticed the clothes when the police drove him by the Stafford house after his arrest and he saw Walter on the porch. (Lackey Dep., ECF No. 84, PageID.1408-.1409)

Cynthia called 911.  The police responded around 7:40 a.m. and more investigators converged on the home around 8:00 a.m.  One of the officers, Defendant Penn, with a dog, Midas, began tracking for the perpetrator by scent. Penn was told that the perpetrator was a Black male, approximately 18 years old, with a stubby beard, blue t-shirt, and yellow and red leather pants, with black gym-type shoes. (Penn Tr. Trans., ECF No. 84, PageID.1470)   Instead of beginning the tracking of the perpetrator from the back porch of the house, Penn began the tracking at the open gate at the rear of the back yard.  Lackey claims that this path was a well-traveled path used by many people, including himself. Lackey was on his front porch across the alley and a vacant yard on Chalmers

5

smoking a cigarette. The tracking dog ran past Lackey and went toward a house two doors down from Lackey's house. (Lackey Dep., ECF No. 84, PageID.1398-.1399) Lackey stopped Penn and asked what was going on. Penn told Lackey about the crime. While Lackey was conversing with Penn, the officer called for a description of the perpetrator. He was given the description of black shoes, yellow pants, red jacket with two white stripes down the sleeve. (*Id.*) At the time, Lackey was wearing Damage brand jeans, red with yellow leather patches on the thighs, with blue cuffs, a blue-teal t-shirt that matched the cuffs on the pants, and a black Adidas gym shoes with three white stripes. Officers Burton, Penn, and Smith indicated they encountered Lackey on his porch at approximately 8:00 a.m. (Burton Tr. Trans., ECF No. 84, PageID.1276) The officers decided that Lackey matched the suspect's description. Although Lackey's clothes did not match the perpetrator's clothes, Lackey was arrested and charged with multiple counts of sexual misconduct involving a child under thirteen. (ECF No. 22, PageID.72-.75)

Lackey claims that the victim did not identify him as the perpetrator and there was no physical evidence Lackey was near the victim at the time of the assault. The evidence was fabricated to bolster the case because the victim did not identify Lackey as the perpetrator. There was no physical evidence linking

Lackey to the victim. Officer Beard's report was taken at 8:45 a.m. after Lackey had been arrested. (Beard Rep., ECF No. 84, PageID.1362) Officer Hurley took the statement of the victim's mother, Cynthia, at 9:10 a.m. (Hurley Rep., ECF No. 84, PageID.1359) Officer Smith also made a report after Lackey's arrest at 8:39 a.m. (Smith Rep., ECF No. 84, PageID.1535)

Lackey was convicted on January 26, 1992, and was sentenced on March 9, 1993 to 15-25 years in prison. Lackey spent 22 years in prison and another two years on probation. (ECF No. 22, PageID.21)

The Innocence Project of New York had worked for Lackey's release and exoneration since 2010. In 2018, Innocence Project submitted the case to the Wayne County Prosecutor's Office's Conviction Integrity Unit ("CIU"). The CIU determined that the dog-tracking evidence was flawed. On January 10, 2019, the Wayne County Prosecutor's Office dismissed the charges, and the convictions and sentences were ordered vacated and dismissed. (ECF No. 22, PageID.81) Lackey thereafter filed the instant action.

## II.  ANALYSIS

### A.  Standard of Review

Summary judgment is appropriate only if the movant demonstrates that there is "no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Stoudemire v. Mich. Dep't of Corr.*, 705 F.3d 560, 565 (6th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In assessing the motion, the court must view all facts and make all inferences in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *King v. City of Rockford, Michigan*, 97 F.4th 379, 389 (6th Cir. 2024).

Qualified immunity shields public officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To overcome the qualified-immunity defense, a plaintiff must show that the official "(1) [ ] violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). A right is clearly established when "every 'reasonable official would [have understood] that what he is doing violates that right.'" *Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483

U.S. 635, 640 (1987)) (alterations in original); *Reed v. Campbell Cnty., Kentucky*, 80 F.4th 734, 742 (6th Cir. 2023).

If a defendant challenges the plaintiff's version of the facts, an issue of fact is created, and qualified immunity must be denied. *See, Johnson v. Jones,* 515 U.S. 304 (1995). However, even if a defendant challenges the plaintiff's version of the facts, a court may grant qualified immunity if one of the parties' accounts is "blatantly contradicted by the record, so that no reasonable jury could believe it." *Scott v. Harris,* 550 U.S. 372, 380 (2007).

Defendants Hurley, Beard, Smith, and Burton argue they are entitled to qualified immunity as to the claims against them. Lackey responds there are genuine issues of material facts and that these Defendants are not entitled to qualified immunity.

B.     4th and 14th Amendments Evidence Fabrication (Count I)

The Due Process Clause of the Fourteenth Amendment is "violated when evidence is [1] knowingly fabricated and [2] a reasonable likelihood exists that the false evidence would have affected the decision of the jury." *Jackson v. City of Cleveland*, 925 F.3d 793, 815–16 (6th Cir. 2019) (quoting *Gregory v. City of Louisville*, 444 F.3d 725, 737 (6th Cir. 2006)). For purposes of this analysis, the constitutional violation based on knowingly fabricating evidence was clearly

9

established in 2019 at the time of Lackey's arrest and subsequent trial.

### 1. Hurley

Lackey asserts that Hurley fabricated evidence by identifying Lackey as a "defendant" in Hurley's Investigator's Report. However, Lackey has not supported his claim that using the word "defendant" in a report is a fabrication of the evidence and that there is no indication that the language in the report was presented to the jury. Assistant Prosecuting Attorney Grier testified that she did not use Hurley's Investigator's Report in determining whether to charge Lackey and to proceed to preliminary examination. Hurley is entitled to summary judgment as to the fabricating evidence claim in Count I since there is no genuine issue of material fact that using the word "defendant" in a report, which was not used before the jury, is not a fabrication of evidence in violation of the Lackey's constitutional right.

### 2. Beard, Burton, and Smith

Lackey asserts that Beard, Burton, and Smith fabricated the physical description of the rapist provided by victim SS. Lackey relies on SS's preliminary examination and trial testimonies, which the officers argue are inadmissible hearsay under Rule 801(c)(1) of the Rules of Evidence. Lackey asserts that SS did not identify the perpetrator as a black man, but that the officers so noted in

their reports.

SS testified at her deposition in this case that she cannot say what she told the police at the scene but that she has no reason to believe that her mother's (Cynthia who is now deceased) description of the perpetrator given to the officers was false. Cynthia testified at the preliminary exam and trial that SS told her that the perpetrator had on a red and white jacket, yellow pants, black gym shoes, was 18-19 years old, with a brown complexion. Beard, Burton, and Smith each interviewed SS and that SS signed her witness statement. SS testified at her deposition in this case that she told the officers the perpetrator was 18-19 years old. The issue then is the skin color evidence. Even if SS did not identify the perpetrator as black, Cynthia's testimony at trial was that SS told her and the officers that the perpetrator was black. Lackey was tracked by the dog and Lackey met the other description provided by SS–the age and wearing the clothes she described.

Lackey cannot meet his burden of showing that the officers knowingly fabricated the evidence that the perpetrator was a Black man because SS's mother, Cynthia, testified at trial that SS told her and the officers that the perpetrator was Black. SS's deposition testimony is that she cannot recall what she told the officers and that Cynthia's testimony was more accurate. Beard, Burton, and

Smith are entitled to summary judgment since Lackey is unable to meet his burden that the officers violated the constitution by fabricating the evidence that the perpetrator was a Black man.

### C. 4th Amendment Malicious Prosecution (Count II)

In *Sykes v. Anderson*, 625 F.3d 294 (6th Cir. 2010), the Sixth Circuit articulated the elements of a § 1983 claim for malicious prosecution: "(1) a criminal prosecution was initiated against the plaintiff, and the defendant made[,] influenced, or participated in the decision to prosecute; (2) there was a lack of probable cause for the criminal prosecution; (3) the plaintiff suffered a deprivation of liberty, as understood under Fourth Amendment jurisprudence, apart from the initial seizure; and (4) the criminal proceeding was resolved in the plaintiff's favor." *Sanders v. Jones*, 845 F.3d 721, 728 (6th Cir. 2017) (citing *Sykes*, 625 F.3d at 309–10).

As to the first element, there is no dispute that a criminal prosecution for criminal sexual conduct and breaking and entering was instituted against Lackey and that the officers participated in the investigation. There is also no dispute that Lackey was found guilty and imprisoned for 22 years satisfying the third element. The fourth element is also satisfied in that with the help of the Innocence Project, the Wayne County's Prosecutor's CIU determined that the dog-tracking evidence

was flawed resulting in the dismissal of Lackey's charges. The issue then is whether there was a lack of probable cause in bringing the charges.

Lackey argues that based on the fabricated identification by the officers, there would be no probable cause to prosecute Lackey. He further argues that there is no evidence that he was in the house. However, based on the fabrication of evidence discussion above, the malicious prosecution claim fails. As noted above, even though SS did not identify the perpetrator as a black man, her mother testified that SS told her and the officers that the perpetrator was a black man at the preliminary examination. The officers are entitled to summary judgment on the malicious prosecution claim against them since Lackey cannot meet the elements of a § 1983 claim for malicious prosecution.

### D. 14th Amendment Due Process "Brady" Violations (Count III)

A constitutional tort claim based on *Brady v. Maryland*, 373 U.S. 83 is properly construed as a 42 U.S.C. § 1983 claim. *Brady* holds that prosecutors must turn over favorable evidence to the accused when the evidence is material either to guilt or punishment; wrongful withholding is a violation of the right to due process. 373 U.S. at 89. Evidence is material when "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles v. Whitley*, 514 U.S. 419, 433–34

(1995) (internal quotation marks omitted). This obligation extends to evidence that is favorable to the accused "either because it is exculpatory, or because it is impeaching." *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999). "[B]ecause the police are just as much an arm of the state as the prosecutor, the police inflict the same constitutional injury when they hide, conceal, destroy, withhold, or even fail to disclose material exculpatory information." *Moldowan v. City of Warren*, 578 F.3d 351, 379 (6th Cir.2009); *Robertson v. Lucas*, 753 F.3d 606, 619–20 (6th Cir. 2014). *United States v. Ruiz,* 536 U.S. 622 (2002) established that impeachment material need only be disclosed for trial. *See United States v. Wells*, 260 F. App'x. 902, 903–04 (6th Cir.2008); *Robertson*, 753 F.3d at 621. "In general, the principles announced in *Brady* do not apply to a tardy disclosure of exculpatory information, but to a complete failure to disclose. If previously undisclosed evidence is disclosed ... during trial, no *Brady* violation occurs unless the defendant has been prejudiced by the delay in disclosure." *United States v. Word*, 806 F.2d 658, 665 (6th Cir.1986) (internal citation omitted); *Robertson*, 753 F.3d at 621.

The requirements to establish a *Brady* violation are: (1) evidence favorable to a defendant; (2) that was suppressed; (3) and would have had a reasonable probability of changing the result of the proceeding. *Mills v. Barnard*, 869 F.3d

473, 486 (6th Cir. 2017).

Lackey bases his *Brady* violation claims on the fabrication of evidence by the officers, specifically his complexion. However, as noted above, Cynthia testified at the preliminary examination and at trial that SS told her that the perpetrator was a Black man. Lackey cannot carry his burden that the officers failed to present evidence of fabrication to the prosecutor in violation of *Brady*.

### III. CONCLUSION/ORDER

For the reasons set forth above,

IT IS ORDERED that the Motion for Summary Judgment filed by Defendants L.T. Hurley, Roslyn Beard, Willie Smith, and Joseph Burton **(ECF No. 81)** is GRANTED. Defendants Hurley, Beard, Smith, and Burton are DISMISSED from this action. Defendant Estate of William Penn's Personal Representative John Hermann remains.

s/Denise Page Hood
DENISE PAGE HOOD
United States District Judge

DATED: September 30, 2024